1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   SCOTT PATRICK,

11         Petitioner,                    No. CIV S-07-0582 GEB GGH P

12         vs.

13   SUSAN HUBBARD, Warden,[1]            <u>ORDER</u> &

14         Respondent.                    <u>FINDINGS AND RECOMMENDATIONS</u>

15   _____/

16   <u>Introduction</u>

17         Petitioner, a state prisoner proceeding with appointed counsel, has filed an

18   application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pending before the court is

19   respondent's May 21, 2007, motion to dismiss as barred by the AEDPA statute of limitations,

20   which petitioner opposed.  This matter came on for hearing, on August 16, 2007.[2]  Jennifer

21   Sheetz appeared for petitioner, and Susan Orton represented respondent.

22   \\\\\

23   _____

24         [1]  Respondent asks that the current warden of the California Medical Facility, Susan
     Hubbard, be substituted for R.K. Wong as respondent.

25

26         [2]  At the original hearing, set for June 28, 2007, the parties sought, and were granted, a
     continuance of the hearing date.

1  Petition

2          Petitioner was sentenced to a term of 360 years to life, upon being convicted in

3  Sacramento County Court of fifty counts of lewd and lascivious acts upon a minor with force as

4  well as two counts of forcible oral copulation and two counts of forcible sexual intercourse upon

5  a child, on February 4, 1999.  Petition, p. 2; Motion to Dismiss (MTD), p. 2, Lodged Document

6  (Lodg. Doc.) 1.   In his original pro se petition, petitioner identifies the following grounds for his

7  challenge: 1) ineffective assistance of trial counsel; 2) due process violation arising from

8  unconstitutional vagueness of assault allegations; 3) in response to jury inquiry, trial court

9  definition of "substantial" unconstitutionally vague; 4) unconstitutional vagueness of charges

10  pursuant to Cal. Penal Code § 288(b); 5) 360-year-to-life sentence is unconstitutionally

11  disproportionate; 6) use of spouse's testimony abridged petitioner's rights; 7) petitioner's right to

12  be present at every critical stage of trial violated when petitioner was not present during jury

13  inquiry regarding the meaning of "substantial"; 8) petitioner improperly sentenced under state

14  statute and in violation of petitioner's equal protection rights; 9) court abused discretion in

15  dismissing jurors with unique views arising from their experience with "the system"; 10) trial

16  counsel had a conflict of interest; 11) petitioner subjected to malicious prosecution; 12) petitioner

17  subjected to punishment for multiple offenses arising from the same conduct; 13) judicial

18  interference prejudiced petitioner; 14) petitioner prejudiced by court's having admitted

19  inflammatory pictures into evidence.[3]   Petition, pp. 5-9.

20  Motion to Dismiss

21          The statute of limitations for federal habeas corpus petitions is set forth in 28

22  U.S.C. § 2244(d)(1):

23

24  [3] As the undersigned noted at the hearing, petitioner's claims do not all appear to have been exhausted (see Petition, p. 10; MTD, p. 3).  Petitioner's counsel conceded that there was a state supreme court petition that was still pending at the time, and respondent's counsel, who
25  brought the motion to dismiss only on timeliness grounds, indicated willingness to await state court exhaustion of all claims.  Subsequently, petitioner has not notified this court whether
26  exhaustion of all of petitioner's claims has occurred.

2

1   A 1-year period of limitation shall apply to an application for a writ
of habeas corpus by a person in custody pursuant to the judgment
2   of a State court.  The limitation period shall run from the latest of

3   (A) the date on which the judgment became final by the conclusion
of direct review or the expiration of the time for seeking such
4   review;

5   (B) the date on which the impediment to filing an application
created by State action in violation of the Constitution or laws of
6   the United States is removed, if the applicant was prevented from
filing by such State action;

7
(C) the date on which the constitutional right asserted was initially
8   recognized by the Supreme Court, if the right has been newly
recognized by the Supreme Court and made retroactively
9   applicable to cases on collateral review; or

10  (D) the date on which the factual predicate of the claim or claims
presented could have been discovered through the exercise of due
11  diligence.

12         The Third District Court of Appeals affirmed petitioner's conviction and the

13  subsequent petition for review to the California State Supreme Court was denied on July 12,

14  2000, with issuance of the remittitur on July 17, 2000.[4]   MTD, pp. 2-3.  As respondent sets forth

15  (id., at 3), petitioner's conviction became final on October 15, 2000, ninety days after the state

16  supreme court denied his petition for review on direct appeal.[5]   Bowen v. Roe, 188 F.3d 1157,

17  1158-59 (9th Cir. 1999) ("holding] that the period of 'direct review' in 28 U.S.C. §

18  2244(d)(1)(A) includes the [ninety-day] period within which a petitioner can file a petition for a

19  writ of certiorari with the United States Supreme Court, whether or not the petitioner actually

20  files such a petition.")  The statute of limitations began to run the day after the date of final

21  conviction/judgment, on October 16, 2000.  Patterson v. Stewart, 252 F.3d 1243, 1246 (9th Cir.

22  2001).  Therefore, petitioner had until October 16, 2001, to file a timely federal petition.  The

23  instant petition, filed on March 26, 2007, is untimely absent any applicable tolling.

24  _____

25    [4] Respondent has not lodged the denial of the petition for review, but petitioner does not
take issue with the date of denial set forth.

26    [5] The ninety days has been calculated from the date of issuance of the remittitur.

3

1    Section 2244(d)(2) provides that the time during which a properly filed

2  application for State post-conviction or other collateral review with respect to the pertinent

3  judgment or claim is pending shall not be counted toward any period of limitation.  Respondent

4  mistakenly characterizes all six of petitioner's state post-conviction collateral challenges as

5  having been filed pro se.  MTD, p. 2.  The initial petition filed in Sacramento County Superior

6  Court was filed by Richard Dangler on petitioner's behalf on July 6, 2001.[6]  Lodg. Doc. 2.

7  Although respondent states that the petition was denied on August 21, 2005 (MTD, p. 2), that is

8  an evident typographical error, the correct date of denial being August 21, 2001.  Lodg. Doc. 4.

9    The second Sacramento County Superior Court petition *was* filed pro se on

10 August 8, 2005,[7] and denials issued on Oct. 3, 2005, Oct. 16, 2005, and Oct. 26, 2005.[8]  MTD, p.

11 2; Lodg. Doc. 3.  A third petition was filed in Sacramento County Superior Court on March 6,

12 2007, and denied on April 19, 2007, according to respondent.  MTD, p. 2.  A fourth petition was

13 filed on January 17, 2007, in the Third District Court of Appeal, and denied on Jan. 25, 2007.

14 MTD, pp. 3-4.  Petitioner's fifth petition was filed in the state supreme court on March 22, 2007,

15 and a sixth was filed in the state supreme court, on March 26, 2007, and is still pending.  MTD,

16 p. 4.  The instant petition, as noted, was filed on March 26, 2007.  Id.[9]

17

18    [6]  Although initially, respondent stated that this petition was filed on July 18, 2001,
   respondent's counsel corrected the date to July 6, 2001, in the Reply, p. 4, n. 2.  See, also,
19 Opposition, p. 5, citing petitioner's Exhibit B, Dangler's representation that it was filed on July
   6, 2001.
20
    [7] Although the document is file-stamped August 23, 2005, the mailbox rule is applicable
21 to  this pro se petition.  Stillman v. Lamarque, 319 F.3d 1199, 1201 (9th Cir. 2003)(mailbox rule
   applies to pro se prisoner who delivers habeas petition to prison officials for the court within
22 limitations period).

23    [8] No record of the serial denials is lodged, but again petitioner does not challenge the
   dates.
24
    [9] The court observes that respondent has lodged no document copies to support the filing
25 and denial  dates of the third and fourth petitions, nor any copy to support the fifth and sixth
   petition filing dates, but again petitioner raises no issue as to the number and dates of these
26 filings/denials.

1    Respondent concedes that petitioner is entitled to statutory tolling during the

2  pendency of the first state court habeas petition, which appears to have been from July 6, 2001,

3  until August 21, 2001.  MTD, p. 4, citing Pace v. DiGuglielmo, 544 U.S. 408, 410, 125 S. Ct.

4  1807 (2005)(noting that under § 2244(d)(2), a "properly filed application for State post-

5  conviction or other collateral review...." tolls the AEDPA statute of limitations).  Respondent

6  maintains that petitioner unreasonably delayed in failing to file his next state court habeas

7  petition for just over four years, until August 23, 2005.  MTD, p. 4.

8    Petitioner argues for statutory tolling under 28 U.S.C. § 2244(d)(1)(B) on the

9  grounds that petitioner's incompetent counsel, unregulated by the California State Bar

10  Association, constituted a state-created impediment foreclosing petitioner's ability to timely file

11  in this court.   Opposition (Opp.), pp. 5-20.[10]  Petitioner also argues for timeliness on the ground

12  of entitlement to equitable tolling.  Id.

13  Equitable Tolling

14    Because sufficient statutory tolling, under present law, is not available to

15  petitioner, the court turns to equitable tolling.

16    In Calderon v. U.S. District Court (Beeler), 128 F.3d 1283, 1288 (9th Cir. 1997),

17  overruled on other grounds, Calderon v. U. S. District Court (Kelly), 163 F.3d 530 (9th Cir.

18  1998), itself abrogated by Woodford v. Garceau, 538 U.S.202, 123 S. Ct. 1398 (2003), the Ninth

19  Circuit found that the statute of limitations could be equitably tolled if extraordinary

20  circumstances beyond a prisoner's control made it impossible to file the petition on time.   "In

21  addition, '[w]hen external forces, rather than a petitioner's lack of diligence, account for the

22  failure to file a timely claim, equitable tolling may be appropriate.'" Lott v. Mueller, 304

23  F.3d 918, 922 (9th Cir. 2002), quoting Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999).

24  \\\\\

25

26    [10] The undersigned references the pagination of the court's electronic docketing system.

1       Equitable tolling will not be available in most cases because tolling should only

2  be granted if extraordinary circumstances beyond a prisoner's control make it impossible for him

3  to file a petition on time.  Beeler, 128 F.3d at 1288-89.  As held in Beeler,  "[w]e have no doubt

4  that district judges will take seriously Congress's desire to accelerate the federal habeas process,

5  and will only authorize extensions when this high hurdle is surmounted." 128 F.3d at 1289.

6  "Mere excusable neglect" is insufficient as an extraordinary circumstance.  Miller v. New Jersey

7  Dept. of Corrections, 145 F.3d 616, 619 (3rd Cir. 1998).  Moreover, ignorance of the law does

8  not constitute such extraordinary circumstances.  See Hughes v. Idaho State Bd. of Corrections,

9  800 F.2d 905, 909 (9th Cir. 1986).

10      In the Calderon (Beeler) case, the Court of Appeals held that the district court

11  properly found equitable tolling to allow Beeler more time to file his petition.  Beeler's lead

12  counsel withdrew after accepting employment in another state, and much of the work he left

13  behind was not useable by replacement counsel – a turn of events over which the court found

14  Beeler had no control.  The Court of Appeals held that the district court properly found these

15  were "extraordinary circumstances" sufficient to toll the statute of limitations.[11]

16      The Ninth Circuit also found extraordinary circumstances in Calderon v. U.S.

17  Dist. Ct. For Cent. Dist. Of Ca. (Kelly), 163 F.3d 530 (9th Cir. 1998) (en banc).  The three

18  reasons given which independently justified tolling were: a district court stay which prevented

19  petitioner's counsel from filing a habeas petition, mental incompetency until a reasonable time

20  after the court makes a competency determination, and the fact that petitioner did at one time

21  have timely habeas proceedings pending which were mistakenly dismissed, not as a result of any

22  doing by petitioner.  Id. at 541-42.  See also Corjasso v. Ayers, 278 F.3d 874 (9th Cir. 2002)

23  (clerk's unjustified rejection of a petition justified partial tolling); Miles v. Prunty, 187 F.3d at

24

25      [11]  See also Baskin v. United States, 998 F. Supp. 188 (D. Conn. 1998), wherein the court
   applied equitable tolling where petitioner's attorney failed to notify him of the denial of a petition
26  for certiorari until thirteen months after the denial was entered.

6

1   1107 (delay by prison in withdrawing funds from prisoner's trust account, preparing and mailing

2   filing fee were circumstances beyond his control, qualifying him for equitable tolling); Stillman

3   v. Lamarque, 319 F.3d 1199, 1202-03 (9th Cir. 2003) (equitable tolling permitted where litigation

4   coordinator broke a promise to petitioner's counsel to return a signed petition for timely filing);

5   Spitsyn v. Moore, 345 F.3d 796 (9th Cir. 2003) (sufficiently egregious misconduct by counsel,

6   such as wholly deficient performance, may justify equitable tolling).

7            Conversely, in U.S. v. Van Poyck, 980 F. Supp. 1108, 1110-11 (C.D. Cal. 1997),

8   the court found that a petitioner's circumstances were not extraordinary in the following

9   circumstances: inability to obtain transcripts from court reporters, and general prison lockdowns

10  preventing the prisoner's access to the library and a typewriter which were necessary to his

11  motion.  See also Frye v. Hickman, 273 F.3d 1144, 1146 (9th Cir. 2001) (counsel's miscalculation

12  of limitations period "and his negligence in general do not constitute extraordinary circumstances

13  sufficient to warrant equitable tolling"); Tacho v. Martinez, 862 F.2d 1376, 1381 (9th Cir. 1988)

14  (reliance on incompetence of jailhouse lawyer not sufficient to justify cause to excuse procedural

15  default); Turner v. Johnson, 177 F.3d 390, 392 (5th Cir. 1999) (prisoner's unfamiliarity of law did

16  not toll statute); Eisermann v. Penarosa, 33 F.Supp.2d 1269, 1273 (D.Haw. 1999) (lack of legal

17  expertise does not qualify prisoner for equitable tolling); Henderson v. Johnson, 1 F.Supp.2d

18  650, 656 (N.D. Tex. 1998) (same); Fadayiro v. United States, 30 F.Supp.2d 772, 779-80 (D.N.J.

19  1998) (delay in receipt of transcripts does not justify equitable tolling).

20           "Generally, a litigant seeking equitable tolling bears the burden of establishing

21  two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary

22  circumstance stood in his way."  Pace v. DiGuglielmo, 544 U.S. 408, 418, 12 S. Ct. 1807, 1814

23  (2005); Miranda v. Castro, 292 F.3d 1063, 1065 (9th Cir. 2002) (a habeas petitioner bears the

24  burden of proving that equitable tolling should apply to avoid dismissal of an untimely petition).

25  "Equitable tolling is unavailable in most cases," and is only appropriate "if *extraordinary*

26  circumstances beyond a prisoner's control make it impossible to file a petition on time."

1  Miranda, supra, at 1066 (internal quotations/citations omitted [emphasis added in Miranda]).  A

2  petitioner must reach a "very high" threshold "to trigger equitable tolling [under AEDPA]...lest

3  the exceptions swallow the rule."  Id.

4  Discussion

5          Petitioner sets forth the tortured history of petitioner's involvement with Richard

6  Dangler, whom petitioner's present counsel finds notable for his "overwhelming incompetence

7  and mendacity" as habeas counsel.  Opp., p. 5.  According to petitioner, his brother retained

8  Dangler as habeas counsel for him, on May 16, 2001.  See Exhibit A, Declaration of petitioner

9  Scott Patrick (hereafter, simply, Exh. A), at p.2.   Exh. B, p. 1, is a copy of a portion of a letter,

10  dated May 18, 2001, from Dangler to petitioner, indicating that the fee had been provided for

11  Dangler to exhaust petitioner's habeas claims through the state supreme court.

12          Petitioner quotes from the August 21, 2001, Sacramento County Superior Court

13  denial of the petition that Dangler filed in July, 2001, on petitioner's behalf:

14          Petitioner's claims are all **completely baseless**.  Many are
            procedurally barred, as noted above.  Nor does petitioner attempt to
15          attach any reasonably available documentation to support his
            generalized, conclusory claims that require such documentation.
16          This is **inexcusable** when a habeas petitioner is being represented
            by an attorney licensed to practice law in this state, as is this
17          petitioner.

18  Opp., pp. 5-6, Lodg. Doc. 4, p. 4 (emphasis in original).

19          Petitioner includes Dangler's Sept. 24, 2001, correspondence to petitioner, Exh.

20  B, p. 3, wherein Dangler states that he filed a petition on July 6, 2001, for petitioner in

21  Sacramento County Superior Court and characterizing his dubious effort as having been

22  successful in stopping the running of the clock under § 2254(d).  He misnames the applicable

23  case, which is corrected by a hand-written marginal note to Nino v. Galaza,183 F.3d 1003 (9th

24  Cir. 1999), which is mis-cited in the corrected note, spinning what petitioner's current counsel

25  accurately characterizes as "the superior court's scathing denial" (Opp., p. 6) as "the best of both

26  worlds" because the court was not going to criticize its prior judgment and he and petitioner

8

1  could now take their time filing the state appellate court decision, since the clock had been

2  stopped.

3          Petitioner maintains that despite taking a long time to prepare a subsequent

4  petition, Dangler and his associates repeatedly assured him that they were diligently working on

5  his petition.  In May, 2004, an associate of Dangler's told him that the petition was almost

6  complete and petitioner's wife was asked to submit a declaration in June of 2004.  However, in a

7  letter dated June 11, 2004, Dangler told petitioner that he was retiring due to health problems and

8  that Roman Rector would take over petitioner's case, providing a consent form for substitution of

9  counsel to be processed before June 28, 2004, which petitioner signed.  Opp., p. 7, Exh. A, p. 4,

10  Exh. B., p. 4.

11          Dangler was listed as not eligible to practice law as of June 30, 2004, and resigned

12  with charges pending as of September 3, 2004.  Opp., p. 7, Exh. D, State Bar Disciplinary File

13  for Richard Dangler, p. 1.  Petitioner received a letter from Roman Rector (dated Sept. 1, 2004),

14  on Sept. 8, 2004, when petitioner learned for the first time that Dangler had disciplinary issues;

15  nevertheless, petitioner agreed that Roman Rector could hire Dangler as a consultant on

16  petitioner's case.  Thereafter, on Sept. 22, 2004, petitioner received a letter from Rector saying

17  that he would be dropping petitioner's case and asking where his files should be sent.  Petitioner

18  responded within a week (after coming off lockdown status), beseeching Rector to finish the

19  petition and also providing his brother's address in case Rector did withdraw.  On Oct. 5, 2004,

20  when petitioner learned that Rector's office was refusing to communicate with his brother,

21  petitioner provided the authorization, at which time his brother was told that another attorney

22  would be finishing the petition.  Nevertheless, no petition was filed in 2004.  Opp., Exh. A, pp.

23  4-5; Exh. B, pp. 5-10.

24  \\\\\

25  \\\\\

26  \\\\\

9

1    Petitioner learned of the decision in In re: White, 121 Cal. App.4th 1453, 18 Cal.

2  Rpt.3d 444  (Cal. App.  2004),[12] in early 2005, after which petitioner tried to retain counsel,

3  sending out 20 letters, to recover his $7500.00 retainer from Dangler, all to no avail.  Opp., p. 7,

4  Exh. A, p. 6.  Petitioner's August 23, 2005, was a request for the court to order the return of his

5  retainer and to grant him equitable tolling to file a subsequent brief.  Id.  The petition was denied

6  on October 27, 2005, the court stating that it lacked jurisdiction but suggesting petitioner seek a

7  civil remedy against Dangler.  Id.[13]  Petitioner filed a complaint with the State Bar on or about

8  December 27, 2005.  Id.

9    Petitioner filed a motion for reconsideration to the Sacramento County Superior

10  Court, following the Oct., 2005, denial, seeking permission to re-file a petition not subject to a

11  time bar.  Opp., pp. 7-8, Exh. A, p. 7.  The request for reconsideration was granted on March 28,

12

13  [12] In White, the California Third District Court of Appeal, in an exhaustive opinion,
sanctioned Richard H. Dangler, Jr.,  for the filing of "such egregious cases," wherein Dangler,
14  inter alia submitted petitions that contained  "gross misstatements of fact, misrepresentations of
law, and repetitions of appellate contentions long ago resolved.... In addition, ...[to accusing] this
15  court of ignoring the law ... and ...[being] ...biased in favor of the prosecution."  The court noted
that Dangler's repeated misrepresentations of facts and frivolous contentions in three earlier
16  appeals decided in 1991 and 1992 resulted in his removal from the attorney panel appointed to
represent indigents on appeal in the district.  Consolidating three petitions subsequently filed by
17  Dangler in White, for a hearing on the case and orders to show cause in 2004, the court found
"that Dangler has for some time been operating a writ mill, in which attorneys and essentially
18  unsupervised law students have written petitions for writs of habeas corpus for filing in state and
federal courts under Dangler's name. Dangler signed a great number of the petitions without
19  reading them, and on some occasions a clerical employee signed Dangler's name on the petitions.
Dangler generally received a $7,250 retainer to pursue habeas corpus relief.  He paid law students
20  up to $2,000 for their virtually unsupervised work on a client's case, or paid attorneys up to
$2,500 per client. Thus, from each client, Dangler kept close to $5,000, less other overhead, for
21  personally providing no legal service whatsoever."  The court noted a State Bar disciplinary
action pending against Dangler and his voluntary resignation with pending charges.  The state
22  appellate court dismissed the three petitions as frivolous, denying them without prejudice so that
each petitioner could file a new petition, and imposed monetary sanctions against Dangler.  It
23  was found that far from achieving favorable results as he claimed for a number of his clients, he
was successful in only one out of 53 petitions he had filed over a period of about 12 years.  It
24  appeared to the court "that [Dangler] might be systematically misleading his clients and abusing
the writ process for pecuniary gain."  In addition, the court recounted prior contempt proceedings
against Dangler.  121 Cal. App.4th at 1457-1463, 18 Cal. Rpt.3d 444.
25

26  [13] The court relies on the dates set forth in petitioner's declaration, if there is a
discrepancy between those dates and dates set forth in the briefing.

10

1    2006, as was petitioner's April 13, 2006, request for appointment of counsel.  Id.

2              On February 28, 2006, petitioner had received notice from the State Bar that he

3    might be eligible for reimbursement of the retainer through the Client Security Fund, which

4    provides reimbursements for people who have been defrauded by unscrupulous lawyers;

5    ultimately after petitioner's filing a claim in June of 2006, the retainer was returned to his brother

6    on December 1, 2006.  Exh. A, p. 7, Exh. E, pp. 1-18.

7              After petitioner learned that he had been granted leave to file a successive, late

8    petition (which his then-appointed Sacramento County Superior Court counsel informed him of

9    on August 23, 2006), petitioner could not obtain his transcripts from Roman Rector's office, and

10   filed an ex-parte motion for transcripts on September 7, 2006.  Opp., p. 8,[14] Exh. A, pp. 7-8.   On

11   October 26, 2006, petitioner refiled a motion requesting a copy of the trial transcripts and filed

12   another motion for an extension of time based upon his inability to review a copy of the trial

13   transcripts.  The court never responded to these motions, instead, rescinding its ruling on October

14   31, 2006, wherein petitioner had been permitted to file a subsequent habeas in spite of the time-

15   bar.  Opp., pp. 8-9, Exh. A, p. 8.  Petitioner also had unsuccessfully sought to retain his assigned

16   counsel from the Sacramento Superior Court for purposes of filing a new petition.  Opp., p. 8,

17   Exh. A, p. 8.

18             Although never able to obtain a copy of his trial transcripts, petitioner filed a new

19   petition in Third District Court of Appeal, on December 18, 2006, despite several lockdowns.

20   Opp., p. 9, Exh. A, pp. 8-9.  On January 11, 2007, the court returned the petition for lack of an

21   original signature.  Petitioner provided an original signature and returned it to the court on

22   January 11, 2007.   The petition was summarily denied on January 25, 2007.  Id.

23             Petitioner was transferred to CMF, Vacaville on December 20, 2006.   Prior to his

24   transfer, petitioner had worked with his friend to file a petition with the California Supreme

25

26   [14] Petitioner's counsel at one point asserts that this motion was denied, but petitioner, in
     his declaration, states that the court simply did not respond to this motion.

1   Court.  Due to a miscommunication, when the appellate court issued a summary denial,

2   petitioner filed duplicate petitions with the Supreme Court, on March 19, 2007, and March 22,

3   2007, represented by case numbers S151270 and S151145.  Petitioner has since formally

4   redacted the duplicate filing.  Exh. A, pp. 9.

5          An unverified petition was filed in the Sacramento County Court on March 26,

6   2007, by a friend after the friend had read the Cunningham v. California decision.  Petitioner

7   immediately wrote to his friend and asked him not to file any other petitions or legal briefs on

8   petitioner's behalf.  Opp., p. 10, Exh. A, pp. 9-10.  Again, the instant action was filed in this

9   court on March 26, 2007.

10         While respondent contends that petitioner, in essence, dropped the ball between

11   2001 and 2004, it appears that petitioner made some effort to maintain contact with Dangler and

12   his office during that period.  Nor is it unreasonable with the repeated assurances of Dangler, or

13   more often, his associates, for petitioner to have relied on him during that admittedly extended

14   period of time that Dangler purported to represent him.  While respondent was correct in arguing

15   at the hearing that petitioner does not have a constitutional right to a lawyer for purposes of a

16   habeas petition, neither is it unreasonable or irresponsible of petitioner to have relied on one once

17   counsel had been hired, particularly one who so flagrantly engaged in such aggressive self-

18   promotion with fatuous and fraudulent stories of his success.  See Opp., Exh. B, pp. 11-19.  Also

19   arguably weighing in the balance for petitioner is that at the time in 2001 when Dangler wrote

20   petitioner that he had stopped the clock, per Nino, albeit with an utterly meritless filing for which

21   he was roundly excoriated by the superior court, he was right at that point as far as he went.

22   Nino v. Galaza, supra, 183 F.3d at 1006 (9th Cir. 1999) (the statute of limitations is tolled under

23   28 U.S.C. § 2254(d)(2) during the time properly filed state post-conviction proceedings are

24   pending, and that tolling applies from the time the first state habeas petition is filed until the

25   California Supreme Court rejects the petitioner's final collateral challenge).  Not until 2006, did

26   the Supreme Court make clear that an unexplained, or insufficiently explained years long gap

12

1   between filings could not permit the notion that habeas proceedings were nevertheless pending

2   during the years long hiatus.  Evans v. Chavis, 546 U.S. 189, 126 S. Ct. 846, 849 (2006) (for

3   purposes of § 2244(d)(2), a petitioner is entitled to interval tolling only for petitions that were

4   timely filed under state law).[15]

5               Although respondent faults petitioner for not having secured habeas counsel for

6   some six months after the judgment became final (from October, 2000, until April or May of

7   2001) (Reply, pp. 4-6), the court finds that petitioner was reasonably diligent in securing habeas

8   counsel within that time period, as noted at the hearing, given that some allowances should be

9   made for simply adjusting to the daunting rigors of prison life.  Respondent contends that

10  petitioner should not be permitted equitable tolling due to a claim of detrimental reliance on

11  Dangler's September 24, 2001, letter, because it should be considered in light of the superior

12  court's pointedly critical language (cited above) in its August 21, 2001, denial as to the

13  baselessness of the claims of the petition.  Respondent has a point in emphasizing that petitioner

14  had a physician's education and had been an Army captain and, as a well-educated former

15  professional, should have been at least somewhat alerted, if not alarmed, or, as stated at the

16  hearing, put "on inquiry notice," by the contrast of the insouciant tone of Dangler's letter with the

17  court's blistering order.

18              Nevertheless, while respondent seeks to contrast the circumstances of Spitsyn v.

19  Moore, supra, 345 F.3d 796, where, as noted, the Ninth Circuit has found that sufficiently

20  egregious misconduct by counsel may justify equitable tolling, there is little doubt that Dangler's

21  conduct was, and has been recognized as, wholly deceptive and spectacularly deficient.  For this

22

23         [15] The Supreme Court found that the Ninth Circuit, in Chavis v. LeMarque, 382 F.3d 921
    (2004), had erroneously interpreted Carey v. Saffold, 536 U.S. 214, 122 S. Ct. 2134 (2002), in
24  that the Ninth Circuit had equated denials on the merits by state courts, and especially the state
    supreme court, as an inexorable directive that a petitioner had timely filed the pertinent habeas
25  petition for purposes of federal tolling of the AEDPA limitations statute.  The Evans Court held
    that a decision on the merits did not necessarily mean that a state habeas petition was timely
26  filed.  Evans v. Chavis, 546 U.S. 189, 126 S. Ct. 846.

13

1   reason, the court finds that petitioner is entitled to equitable tolling for the entire period during

2   which he was associated with either Dangler or Roman Rector.  Thereafter, petitioner has set

3   forth the fairly frenetic pace of often frustrated efforts on his part to proceed to undo the damage

4   that inured to him from having placed his trust in Dangler.  The court finds that petitioner should

5   be granted equitable tolling to proceed in federal court, while implying no opinion as to the

6   merits of this petition.

7           Accordingly, IT IS ORDERED that Warden Susan Hubbard be substituted for

8   R.K. Wong as respondent in this action and the Clerk of the Court is directed to note the

9   substitution in the docket of this case.

10          IT IS RECOMMENDED that respondent's motion to dismiss this action on the

11  ground that it was filed beyond the one-year statute of limitations, filed on May 21, 2007 (#10),

12  be denied.

13          These findings and recommendations are submitted to the United States District

14  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

15  days after being served with these findings and recommendations, any party may file written

16  objections with the court and serve a copy on all parties.  Such a document should be captioned

17  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

18  shall be served and filed within ten days after service of the objections.  The parties are advised

19  that failure to file objections within the specified time may waive the right to appeal the District

20  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

21  DATED: 02/19/08

22                                          /s/ Gregory G. Hollows

23                                          GREGORY G. HOLLOWS
                                            UNITED STATES MAGISTRATE JUDGE
24  GGH:009
    patr0582.mtd
25

26

14