JENNIFER M. SHEETZ (SBN 233375)
LAW OFFICE OF JENNIFER M. SHEETZ
Miller Ave., PMB
Mill Valley, CA 94941
Tel:    (415) 305-2256
Fax:    (415) 634-1382
Email:  jmsheetz@hotmail.com

Attorney for Petitioner
SCOTT PATRICK

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SCOTT PATRICK,

     Petitioner,

  vs.

SUSAN HUBBARD,

    Warden, Respondents.

No. CIV S-07-0582 AK

**SUPPLEMENTAL BRIEFING ON CULLEN V. PINHOLSTER AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**

1

## TABLE OF CONTENTS

2

Page #

TABLE OF AUTHORITIES ........................................................................ ii

3

MEMORANDUM OF POINTS AND AUTHORITIES .................................1

4

5   I.   THERE IS NO BAR TO EXPANSION OF THE EVIDENCE IN
         FEDERAL COURT, AS SECTION 2254(D) DOES NOT APPLY

6        AND SECTION 2254(E) DOES NOT PRESENT A BAR   .....................1

7    A.  Presentation in State Court.....................................................................2

8
     B.  U.S.C. § 2254(d) Does Not Apply As There Was No State
9        Court Decision On The Merits ………….…...……....................................7
           1. Procedural Default ............................................................8
10           a. Cause and Prejudice ..............................................................9

11
     C.  U.S.C. § 2254(e) Does Not Bar Development of Evidence in This
12       Court…………….…………..………………………………………14

13
CONCLUSION..............................................................................................24

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF AUTHORITIES

Federal Cases

Anderson v. Calderon,
    232 F.3d 1053 (9th Cir. 2000) ................................................................21

Baja v. Ducharme,
    187 F.3d 1075 (9th Cir.1999) ...............................................................16

Coleman v. Thompson,
    501 U.S. 722, 730-31 (1991). ................................................................9

Cullen v. Pinholster, 131 S.Ct. 1388
    131 S.Ct. 1388 (2011) ...........................................................1, 2, 7, 8, 15

Engle v. Isaac,
    456 U.S. 107 (1982).............................................................................10

Fisher v. Johnson,
    174 F.3d 710, 716 (5th Cir.1999) .........................................................11

Hearn v. Ryan,
    2011 WL 1526912, at (D.Ariz. Apr.21, 2011) ......................................15

Irwin v. Department of Veterans Affairs,
    498 U.S. 89 (1990)...............................................................................11

Lafler v. Cooper,
    --- S.Ct. ----, 2012 WL 932019 (2012) .................................................23

McCleskey v. Zant,
    499 U.S. 467 (1991) .........................................................................9, 10

McDowell v. Calderon,
    107 F.3d 1351 (9th Cir. 1997) .............................................................22

Murray v. Carrier,
    477 U.S. 488 (1986).........................................................................9, 10

Nulph v. Cook,
    333 F.3d 1052 (9th Cir.2003) ................................................................9

ii

1

2

Ortiz v. Stewart,
        149 F.3d 923 (9th Cir.1998)  ...........................................................16

3

4

Pirtle v. Morgan,
        313 F.3d 116 (9th Cir. 2002) ...........................................................8

5

6

Schriro v. Landrigan,
        550 U.S.465 (2007)...........................................................17

7

8

Smith v. McGinnis,
        208 F.3d 13 (2nd Cir. 2000)  ...........................................................10

9

Spitsyn v. Moore,
        345 F.3d 796 (9th. Cir. 2003)  ...........................................11, 12, 13

10

11

Stokley v. Ryan
        659 F.3d 802, 811 (9th Cir.2011)  ...........................................................17

12

13

Strickland v. Washington,
        466 U.S. 668 (1984) ........................................................... 18, 19

14

15

United States v. Cronic,
        466 U.S. 648 (1984) ...........................................................20

16

17

United States v. Frady,
        456 U.S. 152, 170 (1982) ........................................................... 9

18

19

*United States v. Gagnon,*
        470 U.S. 522 (1985) ...........................................................

20

21

United States v. Swanson,
        943 F.2d 1070 (9th Cir.1991)  ...........................................................20

22

23

Valverde v. Stinson,
        224 F.3d 129, 134 (2d. Cir. 2000) ...........................................................11

24

25

West v. Ryan,
        608 F.3d 477 (9th Cir.2010) ...........................................................18

26

White v. Lewis,
        874 F.2d 599 (9th Cir.1989) ...........................................................9

27

28

Wiley v. Sowders,

iii

1

647 F.2d 642 (6th Cir. 1981)  ................................................................. 20

2

Williams v. Taylor,

3
529 U.S. 362 (2000)................................................................................. 17

4

Williams v. Taylor,

5
529 U.S. 362 (2000)................................................................................. 18

6
State Cases

7

In re White,

8
121 Cal.App.4th 1453 (2004)  ..............................................................4, 5

9
Federal Statutes

10

28 U.S.C.

11
§ 2254 (d) .........................................................................1, passim

12
§ 2254 (e).........................................................................1, passim

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

iv

On March 5, 2012, this Court filed an Order, requesting that the parties address the impact of <u>Cullen v. Pinholster</u>, 131 S.Ct. 1388 (2011), on the Motion to Expand the record filed in this case.  Additionally, this Court requested that the parties address any effort by petitioner to expand the record in support of his ineffective assistance of counsel claim in state court, and the relevance, if any, of <u>Taylor v. Maddox</u>, 366 F.3d 992, 1001 (9th Cir. 2004) has on this issue.  Petitioner sets forth the following supplemental brief in response to the Court's Order.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.      THERE IS NO BAR TO EXPANSION OF THE EVIDENCE IN FEDERAL COURT, AS SECTION 2254(D) DOES NOT APPLY AND SECTION 2254(E) DOES NOT PRESENT A BAR**

In the present case, petitioner's Motion to Expand the Record relates specifically to the claim of inneffective assistance of counsel which was presented to the state court in a habeas petition, separate from his direct appeal.  The state courts denied the petition on procedural grounds,  never reaching the merits of the underlying claim of ineffective assistance of counsel.[1]  Therefore, section 2254(d) does not apply to petitioner's claim. As set forth in full below, petitioner has sufficient cause and prejudice to overcome the procedural default and permit the court to consider the substance of his claim and allow him the opportunity to present factual support for his claim.  Further, section 2254(e) does not present a bar to petitioner's claim, as he was not afforded an opportunity to

develop the factual basis for his claim in state court despite his diligent efforts.
Accordingly, section 2254(d)(1), as interpreted by <u>Cullen v. Pinholster</u> does not present
a bar to factual development in federal court in this case, and this Court should allow
petitioner the opportunity to expand the record.

### A.  Presentation in State Court

Petitioner's Motion to Expand the Record relates specifically to his claim of
inneffective assistance of counsel which was presented to the state court in a <u>pro se</u>
habeas petition, separate from his direct appeal and after retained counsel filed a
frivolous habeas petition on petitioner's behalf in superior court.  Given the importance
of the post-conviction process in this case, petitioner sets forth the procedural
background related to his pursuit for habeas relief in state and federal court[2].

On July 17, 2000 the remittitur was issued in petitioner's direct appeal, and the
decision became final 90 days later, on October 15, 2000.  Several months after the
California Supreme Court denial, petitioner's family stepped in and offered to assist him
in retaining habeas counsel.  On May 16, 2001, petitioner's brother, Mark Patrick,
retained habeas counsel Richard Dangler to prepare and file a petition for writ of habeas
corpus.  Opposition to the Motion to Dismiss, Exh. A.

Mr. Dangler filed an original habeas petition on petitioner's behalf, on July 6,
2001.  The habeas petition included a claim of ineffective assistance of counsel.

---

[1] Due to the convoluted procedural history in this case, petitioner and respondent both
[2] Petitioner asks this Court to take notice of the Exhibits attached to petitioner's
Opposition to the Motion to Dismiss.

Supplemental Briefing re: *Cullen v. Pinholster*          Case No. CIV S-07-0582-AK

1   Unbeknownst to petitioner, Mr. Dangler filed a habeas petition consisting almost

2   entirely of petitioner's direct appeal.  The court denied the petition on procedural

3   grounds, on August 21, 2001, holding:

4

5               Petitioner's claims are all completely baseless.  Many
                are procedurally barred, as noted above.  Nor does
6               petitioner attempt to attach any reasonably available
                documentation to support his generalized, conclusory
7               claims that require such documentation.  This is
                inexcusable when a habeas petitioner is being
8               represented by an attorney licensed to practice law in
                this state, as is this petitioner.
9

10

11          As the court noted throughout the decision denying the petition, most of the

12  claims in the petition were procedurally barred because they were the same exact claims

13  denied in petitioner's direct appeal and the other issues were without minimal

14  supporting evidence.

15

16          Following the terse denial from Sacramento Superior Court, Mr. Dangler wrote

17  petitioner and explained that the petition filed on his behalf was merely a procedural

18  hurdle.  See Opposition to the Motion to Dismiss, Exhibit B at 5.  Mr. Dangler claimed

19  that the petition he filed was just an effort to stop the clock on the one-year statute of

20

21  limitations, and he planned to file a more thorough petition in the court of appeal.  See

22  Opposition to the Motion to Dismiss, Exhibit B at 5.  Further, Mr. Dangler emphasized

23  that they were able to relax now that the clock had stopped running on the federal

24  statute of limitations.  Mr. Dangler characterized the superior court's scathing denial as

25  providing "the best of both worlds," since the superior court was not going to criticize

26

27

28

Supplemental Briefing re: *Cullen v. Pinholster*                    Case No. CIV S-07-0582-AK

its own decision, and now they had no limitation for filing the subsequent petition.  See Opposition to the Motion to Dismiss, Exh. B at 5.

Over the next two years, petitioner and his brother checked in periodically to get an update on the status of the appellate filings.  See Opposition to the Motion to Dismiss, Exh. A at 4.  Mr. Dangler's office rarely responded to their inquiries, and when an associate for the office did respond, the associate assured them that the case was progressing.  See Opposition to the Motion to Dismiss, Exh. A at 4.  Two years passed, and Mr. Dangler's office failed to file a subsequent petition.  On June 11, 2004, Mr. Dangler sent petitioner a letter, indicating that he was retiring from the practice of law. Opposition to the Motion to Dismiss, Exh. B at 6.  On June 30, 2004, Mr. Dangler was listed as not entitled to practice law.  See Opposition to the Motion to Dismiss, State Bar Disciplinary Records for Richard Dangler, attached as Exhibit D at 1.  He eventually resigned on September 3, 2004.  Opposition to the Motion to Dismiss, Exh. D at 1.

After discussing the problems with his habeas petition and Mr. Dangler with other inmates in prison, petitioner was introduced to another inmate who told him of the decision In re White, 121 Cal.App.4th 1453 (2004) (hereafter "White")[3] in early 2005.

_____

[3] In White, the court of appeal summarized Dangler's practices as follows: "... Dangler has for some time been operating a writ mill, in which attorneys and essentially unsupervised law students have written petitions for writs of habeas corpus for filing in state and federal courts under Dangler's name. Dangler signed a great number of the petitions without reading them, and on some occasions, a clerical employee signed Dangler's name on the petitions. Dangler generally received a $7,250 retainer to pursue habeas corpus relief. He paid law students up to $2,000 for their virtually unsupervised work on a client's case, or paid attorneys up to $2,500 per client. Thus, from each client, Dangler kept close to $5,000, less other overhead, for personally providing no legal service whatsoever. [¶] In operating this habeas corpus writ mill, Dangler failed to

4

In <u>White</u>,  the California Third District Court of Appeal, in an exhaustive opinion, sanctioned Richard H. Dangler, Jr., for the filing of "such egregious cases," wherein Dangler, <u>inter alia</u> submitted petitions that contained "gross misstatements of fact, misrepresentations of law, and repetitions of appellate contentions long ago resolved.... In addition, ... [to accusing] this court of ignoring the law ... and ... [being] ... biased in favor of the prosecution."  <u>See</u> <u>White</u>, 121 Cal.App.4th at 1157.  Once petitioner read the decision, he attempted to retain counsel to bring a case against Dangler's Office for the return of  the $7,500  retainer.

Concerned that no counsel would take his case, petitioner filed his own petition in Sacramento Superior Court, on August 23, 2005, requesting that the court order a return of the retainer that he paid Mr. Danger and provide him with equitable tolling so

supervise nonlawyers performing legal work, aided the unauthorized practice of law, and acted as a detrimental role model for a number of law students and young attorneys. Moreover, Dangler admitted that rather than depositing in a trust account the funds received from his clients, he deposited those funds in the general business account of an attorney named Roman Rector, whose office is in the same building as is Dangler's office. [¶] Evidence also revealed Dangler had a State Bar of California (State Bar) disciplinary action pending against him. [¶] During the course of the writ of habeas corpus proceedings in this court, Danger voluntarily resigned, with charges pending, from the State Bar. Dangler asked, and this court agreed, that we would take into account his resignation from the State Bar and, in the interests of justice, we would discharge the OSC re contempt in the White proceeding. [¶] Finding that the three petitions for writs of habeas corpus filed by Dangler on behalf of White, Pena, and Harris-Anderson are frivolous and fail to state a prima facie case for relief, we will deny them without prejudice, and further order that each petitioner may file a new petition for writ of habeas corpus in the superior court, and that the period of time between the date the petitioner retained Dangler and the date upon which this decision becomes final will not be counted against the petitioner with respect to the delay in filing a new habeas corpus petition in the superior court.  <u>White</u>, 121 Cal.App.4th at 1459-1460.

Supplemental Briefing re: *Cullen v. Pinholster*                    Case No. CIV S-07-0582-AK

1  that he might file a subsequent brief.  Opposition to the Motion to Dismiss, Exh. A at 6.

2  The court denied the petition on October 7, 2005.  As noted by the court in its denial,

3

4  petitioner's habeas petition was not the proper procedural vehicle for alleging

5  malpractice and seeking fund reimbursement.  Opposition to the Motion to Dismiss,

6  Exh. A at 6.

7         After receiving the court's denial of his first subsequent petition, petitioner filed

8  a Motion to Reconsider, asking the court to reconsider its denial of his petition as it

9

10  related to his request for leave to file a subsequent time-barred petition.  Subsequently,

11  on March 28, 2006, the Sacramento Superior Court issued and Order to Show Cause on

12  the singular issue related to petitioner's request to file a time-barred subsequent habeas

13

14  petition.  The court also ordered appointment of counsel for appellant.  See Opposition

15  to the Motion to Dismiss, Exh. A at 6.

16         On October 31, 2006, the court rescinded its Order to Show Cause and denied

17  petitioner's request to file a subsequent habeas.  Petitioner never obtained a copy of his

18

19  trial transcripts, but he was able to draft a petition without the use of transcripts.  See

20  Opposition to the Motion to Dismiss, Exh. A at 8-9.  Following several lock-downs and

21  procedural problems, petitioner filed a habeas petition with the Third District Court of

22  Appeal on December 18, 2006, acknowledging the Sacramento Superior Court's denied

23  the petition as successive and untimely.  See Opposition to the Motion to Dismiss, Exh.

24

25  A at 8-9.  On January 11, 2007, the court returned the petition for lack of an original

26  signature.  Petitioner provided an original signature and returned it to the court on

27

28

6

January 11, 2007.  Opposition to the Motion to Dismiss, Exh. A at 8-9.   The petition

was summarily denied on January 25, 2007.

Petitioner filed duplicate petitions with the Supreme Court, on March 22 and 26, 2007, represented by case numbers S151270 and S151145.  Petitioner formally redacted the duplicate filing.  The Supreme Court summarily denied the petitions on August 22, 2007.

On March 26, 2007, petitioner filed the underlying petition with this Court.

### B.  U.S.C. § 2254(d) Does Not Apply As There Was No State Court Decision On The Merits

In the present case, petitioner is not subject to the rule announced in Cullen  v. Pinholster  that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated  the claim on the merits."  131 S.Ct. at 1398.  In Pinholster, the Supreme Court acknowledged that a habeas petitioner who raises a claim that was not adjudicated on the merits in state court, and is therefore not subject to § 2254(d), may present new evidence in federal court, as long as he or she satisfies the requirements of § 2254(e).  See 131 S.Ct. at 1401 ("[N]ot all federal habeas claims by state prisoners  fall within the scope of § 2254(d), which applies only to claims 'adjudicated  on the merits in State court proceedings.'

A review of the procedural background in the present case reveals that the state courts never reached the merits of petitioner's ineffective assistance of counsel claim that was presented to the California Supreme Court.  As set forth above, the original petition filed by Mr. Dangler was denied as frivolous.  Petitioner subsequently filed a

Supplemental Briefing re: *Cullen v. Pinholster*                    Case No. CIV S-07-0582-AK

request for leave to file his own successive pro se petition in superior court out of time. The court denied petitioner's request.  Petitioner then filed a pro se habeas petition in the court of appeal, reiterating his request for the court to accept the successive petition out of time, and setting forth a claim of ineffective assistance of counsel.  The court of appeal summarily denied the petition.  Petitioner filed the same petition at the California Supreme Court, and the court summarily denied his petition.

Here, the Sacramento Superior Court denied petitioner's attempts to file a petition with the claim of ineffective assistance of counsel that was exhausted at the California Supreme Court.  The court rejected the petition on procedural grounds, finding that the petition was successive and untimely.  The record reveals that there was no decision on the merits with respect to the claim of ineffective assistance of counsel, thus deference set forth under section 2254(d) does not apply.  Accordingly, the bar to new evidence under section 2254(d)(1) does not apply.  See Pinholster, 131 S.Ct. at 1398.  Furthermore, as set forth below, this court is not barred from review based upon the state procedural default.

### 1. Petitioner Is Not Barred By Procedural Default

Petitioner raised the allegations of ineffective assitance of counsel by habeas petition to the California state courts which denied relief by citation to state authority not bearing on the merits of the claims.  Based upon the procedural basis for denial, there is no state supreme court decision on the merits of this claim and, to the extent that it is cognizable in this Court, the Court will conduct de novo review of these grounds for relief.  See, e.g., Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir.2002); Nulph v.

Supplemental Briefing re: *Cullen v. Pinholster*                    Case No. CIV S-07-0582-AK

<u>Cook</u>, 333 F.3d 1052, 1056 (9th Cir.2003).  However, a federal court will not review a claim for habeas corpus relief if the decision of the state court regarding that claim rested on a state law ground that is independent of the federal question and adequate to support the judgment.  <u>Coleman v. Thompson</u>, 501 U.S. 722, 730-31 (1991).

The <u>Coleman</u> Court stated the effect of a procedural default, as follows:

> In all cases in which a state prisoner has defaulted his
> federal claims in state court pursuant to an independent
> and adequate state procedural rule, federal habeas
> review of the claims is barred unless the prisoner can
> demonstrate cause for the default and actual prejudice
> as a result of the alleged violation of federal law, or
> demonstrate that failure to consider the claims will
> result in a fundamental miscarriage of justice.

<u>Coleman</u>, 501 U.S. at 750; <u>see also</u> <u>Murray v. Carrier</u>, 477 U.S. 478, 485 (1986). To demonstrate cause for a procedural default, the petitioner must be able to "show that some objective factor external to the defense impeded" his efforts to comply with the state procedural rule.  <u>Murray</u>, 477 U.S. at 488.  For cause to exist, the external impediment must have prevented the petitioner from raising the claim.  <u>See</u> <u>McCleskey v. Zant</u>, 499 U.S. 467, 497 (1991).

With respect to the prejudice prong of cause and prejudice, the petitioner bears, "the burden of showing not merely that the errors [complained of] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension."  <u>White v. Lewis</u>, 874 F.2d 599, 603 (9th Cir.1989), citing <u>United States v. Frady</u>, 456 U.S. 152,

170 (1982).  If the petitioner fails to show cause, the court need not consider whether

the petitioner suffered actual prejudice.  Engle v. Isaac, 456 U.S. 107, 134 n. 43 (1982).

**a. Petitioner Can Show Cause and Prejudice**

As set forth in full above, petitioner's unscrupulous post-conviction counsel, Mr.

Dangler, deprived him of the opportunity to file an original habeas petition and present

his colorable claims to the state courts.  With mendacity and guile, Mr. Dangler filed a

frivolous petition with the superior court and then lied to petitioner, assuring him that

the purpose of his frivolous filing was to "stop the clock" on the statute of limitations.

The delay and detriment caused by Mr. Dangler more than impeded petitioner's efforts

to file a substantive habeas petition in the state courts.

To demonstrate cause for a procedural default, the petitioner must be able to

"show that some objective factor external to the defense impeded" his efforts to comply

with the state procedural rule.  Murray v. Carrier, 477 U.S. at 488.  For cause to exist,

the external impediment must have prevented the petitioner from raising the claim.  See

McCleskey v. Zant, 499 U.S at 497.

Assuming that extraordinary circumstances occurred which prevented a

petitioner from filing a petition for some length of time, the court must still determine

whether the circumstances actually "prevented him from filing his petition on time."

Smith v. McGinnis, 208 F.3d 13, 17 (2nd Cir. 2000).  The word "prevent" requires that

the petitioner demonstrate a causal relationship between the extraordinary

circumstances on which the claim for equitable tolling rests and the lateness of his

filing, a demonstration that cannot be made if the petitioner, acting with reasonable

diligence, could have filed on time notwithstanding the extraordinary circumstances. *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96 (1990) ( "We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights."); *Fisher v. Johnson*, 174 F.3d 710, 716 (5th Cir.1999) (holding that "equity does not require tolling" "absent a showing that [the petitioner] diligently pursued his application the remainder of the time [between the extraordinary circumstance and the filing deadline] and still could not complete it on time"). If the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing. *Valverde v. Stinson*, 224 F.3d 129, 134 (2d. Cir. 2000).

In *Spitsyn v. Moore*, 345 F.3d 796 (9th. Cir. 2003), the Ninth Circuit vacated the district court's dismissal of petitioner's §2254 petition as untimely and remanded for a determination of his entitlement to equitable tolling on the ground that his retained attorney failed to discharge his obligations. After noting that it had not previously granted equitable tolling on these grounds, the court found that "the misconduct of Spitsyn's attorney was sufficiently egregious to justify equitable tolling," summarizing the situation as follows:

> Though he was hired nearly a full year in advance of the deadline, [counsel] completely failed to prepare and file a petition. Spitsyn and his mother contacted [counsel] numerous times, by telephone and in writing, seeking action, but these efforts proved fruitless. Furthermore, despite a

11

1

2

3

4

request that he return Spitsyn's file, [counsel] retained it for the duration of the limitations period and more than two months beyond. That conduct was so deficient as to distinguish it from the merely negligent performance of counsel in [cases in which the court had rejected equitable tolling based on attorney error].

5

6

7

8

Id. at 801. The court went on to reject the state's contentions that "due diligence" required petitioner to filed a timely petition pro se or hire new counsel to take over his case.  Id.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

The present case is comparable to Spitsyn.  Here, petitioner has acted with due diligence in pursuing habeas relief since the California Supreme Court's denial of his direct appeal became final.  See generally, Opposition to Motion to Dismiss, Exh. A. Petitioner retained Mr. Dangler to file a habeas petition on his behalf well in advance of the statute of limitations deadline, and Mr. Dangler failed to file a proper habeas petition and deceived petitioner as to his legal tactics and the status of his case.  Indeed, Mr. Dangler justified the frivolous petition that he filed based upon the approaching statute of limitations (which he had miscalculated by three months) and cited 9th Circuit case law as part of a campaign of misinformation, intentionally misleading petitioner about the status of his case.  See Opposition to Motion to Dismiss, Exh. C; see also Exh. A at 3.  Mr. Dangler's general practice of stretching the truth beyond the bounds of reason is epitomized by the advertising flyers that he regularly sent to clients.  See Opposition to Motion to Dismiss, Exh. B at 13-21.  After Mr. Dangler wrongly told petitioner that the statute of limitations was satisfied with the filing of his Sacramento Superior Court petition, he further deceived petitioner, assuring him that his office was actively

28

Supplemental Briefing re: *Cullen v. Pinholster*                    Case No. CIV S-07-0582-AK

1   working on the appellate petition.  See Opposition to Motion to Dismiss, Exh. A at 4.

2   Petitioner was directed to speak with several associates at Mr. Dangler's office who told

3   petitioner that they were the associate assigned to his case, and the associates further

4   assured him that they were actively working on his case.  Opposition to Motion to

5   Dismiss, Exh. A at 4.

6

7           In fact, there was no appellate petition in draft, and Mr. Dangler's office never

8   filed the subsequent state habeas petitions as per the contract with petitioner.  Petitioner

9   was in fact deceived by Mr. Dangler, and he did not discover the deception until he

10  learned of the White decision.  Opposition to Motion to Dismiss, Exh. A at 6.  Indeed,

11  Mr. Dangler's conduct was so egregious in this case that the State Bar Client Security

12  Fund refunded petitioner his entire retainer for Mr. Dangler's services.  Opposition to

13  Motion to Dismiss, Exh. C.  The State Bar Client Security Fund Commission found that

14  Mr. Dangler, "engaged in acts of intentional dishonesty or deceit by the way in which

15  [he] ran his practice."  See Opposition to Motion to Dismiss, Exh. E.

16

17          Further, as in Spitsyn, petitioner was unable to retrieve his file once he learned

18  of Mr. Dangler's misconduct.  In Spitsyn, the Ninth Circuit also found that the

19  petitioner was entitled to equitable tolling during the time that his counsel, who had let

20  the deadline for filing a timely federal petition run, retained his file.  345 F.3d at 801.

21  The Ninth Circuit found that under these circumstances, it would have been unrealistic

22  to expect the petitioner to file a meaningful petition on his own within the limitations

23  period.  Id.

24

25

26

27

28

Supplemental Briefing re: *Cullen v. Pinholster*                    Case No. CIV S-07-0582-AK

In the instant case, petitioner was also unable to file a timely federal petition because he could not obtain his files from Mr. Dangler or Mr. Rector.  Petitioner only learned of Mr. Dangler's misconduct after he had sold his practice to Mr. Rector and left the jurisdiction for Bermuda.  See Opposition to Motion to Dismiss, Exh. D at 1.  Upon accepting petitioner's case from Mr. Dangler, Mr. Rector made new assurances that petitioner's petition would be filed.  Opposition to Motion to Dismiss, Exh. B at 5.  Then, Mr. Rector tried to withdraw from petitioner's case.  Opposition to Motion to Dismiss, Exh. B at 7.  Upon receiving the letter of withdrawal from Mr. Rector, petitioner and his brother contacted Mr. Rector and negotiated with him to reconsider.  Opposition to Motion to Dismiss, Exh. A at 5.  Mr. Rector's office indicated that they would try to have another attorney take the case, but then Mr. Rector failed to return any of petitioner's subsequent attempts to contact him.  Opposition to Motion to Dismiss, Exh. A at 5.  Further, Mr. Rector's office denied having any of petitioner's files.  For this additional reason, petitioner is entitled to equitable tolling based on Dangler's misconduct.

In sum, petitioner has been diligent in seeking habeas relief, however extraordinary circumstances beyond petitioner's control prevented him from timely filing this petition.  He retained and relied upon counsel to do this for him and instead he was mislead and manipulated.  Based upon the aforementioned circumstances, petitioner was barred from filing a non-frivolous petition for habeas relief in state court, thus prejudicing him.  Indeed, Mr. Dangler's malfeasance deprived petitioner of his opportunity to present habeas claims, including the claim of ineffective

Supplemental Briefing re: *Cullen v. Pinholster*                    Case No. CIV S-07-0582-AK

assistance of counsel, to the state courts.  As set forth in full below, petitioner's claim of ineffective assistance of counsel is strong, thus the resulting bar, which prevented petitioner from presenting the claim in the state courts, amounts to signicant prejudice.

### C.  U.S.C. § 2254(e) Does Not Bar Development of Evidence in This Court

In the present case, § 2254(e)(2) does not bar evidentiary development in federal court because petitioner diligently pursued his claims in state court proceedings but was unable to develop the factual basis of those claims.  As noted above, petitioner diligently sought an evidentiary hearing at every level of the California court system.  However, petitioner's requests were repeatedly denied by the courts.  Moreover, petitioner's claim of ineffective assistance, as presented in his petition, set forth a colorable claim for relief, therefore § 2254(e) does not present a bar to factual development in federal court on this claim.

Recently, in Cullen v. Pinholster, 131 S.Ct. at 1401, the Supreme Court held that, federal courts may not consider new evidence developed at an evidentiary hearing in federal court on claims adjudicated on the merits in state court unless both the standard set forth in 28 U.S.C. § 2254(d)(1) and the standard in 28 U.S.C. § 2254(e)(2) are satisfied.  Accordingly, the federal court is free to consider the need for additional fact development subject to § 2254(e)(2) and Pinholster does not prevent this Court from considering evidence presented at an evidentiary hearing to determine whether habeas relief should be granted.  See Hearn v. Ryan, 2011 WL 1526912, at (D.Ariz. Apr.21, 2011) (holding that where federal court finds, based solely on the state court record, that

Supplemental Briefing re: *Cullen v. Pinholster*                    Case No. CIV S-07-0582-AK

1  state court's decision was unreasonable, then federal court could hold evidentiary

2  hearing to determine whether claim warrants habeas relief).

3
4          Under 28 U.S.C. § 2254(e)(2), the requirements for factual development in

5  federal court is as follows:

6              If the applicant has failed to develop the factual basis
7              of a claim in State court proceedings, the court shall
               not hold an evidentiary hearing on the claim unless the
8              applicant shows that—

9              (A) the claim relies on ... (i) a new rule of
10             constitutional law, made retroactive to cases on
               collateral review by the Supreme Court, that was
11             previously unavailable; or (ii) a factual predicate that
               could not have been previously discovered through the
12             exercise of due diligence; and

13             (B) the facts underlying the claim would be sufficient
14             to establish by clear and convincing evidence that but
               for constitutional error, no reasonable fact finder
15             would have found the applicant guilty of the
16             underlying offense.

17         A district court presented with a request for factual development must first

18  determine whether a factual basis exists in the record to support petitioner's claims and,
19
20  if not, whether factual development "might be appropriate."  Baja v. Ducharme, 187

21  F.3d 1075, 1078 (9th Cir.1999).  A petitioner requesting evidentiary development in

22  federal court must also demonstrate that he has presented a "colorable claim for relief."

23
    Earp, 431 F.3d 1167.  To show that a claim is "colorable," a petitioner is "required to
24
25  allege specific facts which, if true, would entitle him to relief."  Ortiz v. Stewart, 149

26  F.3d 923, 934 (9th Cir.1998).

27

28

16

In <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 n. 1 (2007), the United States Supreme Court interpreted § 2254(e) (2) to require a petitioner to demonstrate that he diligently investigated and pursued his claims, but was nevertheless unable to develop the factual basis of those claims in state court.  A petitioner must do more than point to the absence of a hearing in state court to satisfy the due diligence requirement.  Indeed, <u>Schriro</u> rejected such an interpretation of diligence, and affirmed the denial of an evidentiary hearing even though the state court declined to hold an evidentiary hearing and dismissed the petition.  <u>Schriro</u>, 550 U.S. at 474.  Rather, as the Supreme Court has defined diligence, a petitioner must make "a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court." <u>Williams v. Taylor</u>, 529 U.S. 420, 435 (2000).

As set forth in full above, petitioner diligently sought habeas relief and factual development in state court.  Despite his efforts, petitioner was prevented from developing the factual support for his claim of ineffective assistance of counsel in state court due to habeas counsel's malfeasance which left petitioner without time or a venue to pursue his colorable claim for relief.  Based upon the aforementioned circumstances, petitioner was prevented from filing a potentially meritorious petition for habeas relief in state court despite his considerable efforts.  Accordingly, petitioner has satisfied the diligence requirement under § 2254(e) (2).

In addition, petitioner has a colorable claim to habeas relief based upon the ineffective assistance of his trial counsel.  In <u>Stokley v. Ryan</u>, 659 F.3d 802, 811 (9th Cir.2011), the Ninth Circuit held that to receive an evidentiary hearing, a petitioner must

17

show that he has "a colorable claim of ineffective assistance."  Because petitioner's claim is premised on the alleged ineffective assistance of counsel, he must satisfy the two-pronged test in Strickland.  Specifically, petitioner must present a colorable claim "that (1) 'counsel's representation fell below an objective standard of reasonableness' and (2) there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  West v. Ryan, 608 F.3d 477, 485–86 (9th Cir.2010).

### 1.  Trial Counsel's Failures Constitute Ineffective Assistance

As noted above, a claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel.  Strickland v. Washington, 466 U.S. 668, 686 (1984).  See Williams v. Taylor, 529 U.S. 362, 404-08 (2000).  The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result.  Strickland, 466 U.S. at 686.

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, petitioner must establish two things.  First, petitioner must establish that counsel's performance was deficient and fell below an "objective standard of reasonableness" under prevailing professional norms.  Strickland, 466 U.S. at 687-88.  Second, petitioner must establish that he was prejudiced by counsel's deficient performance and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

18

proceeding would have been different." <u>Id</u>. at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  <u>Id</u>.

In the present case, petitioner was deprived his right to effective counsel prior to and during his trial.  Here, trial counsel prepared in minimalist fashion to defend petitioner against 54 serious charges that carried the equivalent of a life sentence without parole.  In addition to failing to call witnesses and reasonably investigate the case, counsel conceded petitioner's guilt during the opening statement and failed to present a coherent defense.  Counsel's failure in conceding petitioner's guilt as a defense strategy is the most egregious of his failures.

In both Opening and Closing Statements, trial counsel conceded petitioner's guilt with respect to numerous incidents of child molestation, but argued that there was no evidence of physical force.  While trial counsel's tactic was ostensibly a move to limit petitioner's sentence exposure by reducing the offenses to child molestation without force, trial counsel failed to limit the concession to any given number of incidents (54 were charged) or present a coherent defense to the allegation of "duress," thereby eliminating any potential benefit of the concession.  As set forth in full in petitioner's Opening Brief, trial counsel did nothing to mitigate the effects of this concession in preparing for or presenting the case at trial.  Trial counsel's tactic was doomed from its inception, and counsel's other failures only served to exacerbate the impact of this suicidal tactic.

19

1

2

3

4

5

6        **2. Prejudice**

7        Petitioner was entitled to have the issue of his guilt or innocence on the charges

8   presented to the jury as an adversarial issue.  See U.S. v. Cronic, 466 U.S. 648, 659

9   (1984); see also U.S. v. Swanson, 943 F.2d 1070, 1072-1076 (9th Cir. 1991); Wiley v.

10

11  Sowders, 647 F.2d 642, 650 (6th Cir. 1981).

12       In Wiley v. Sowders, the Sixth Circuit found ineffective assistance where the

13  attorney effectively conceded guilt during closing argument.  See Id.  The Wiley court

14

15  stated: "Although statements made by attorneys in closing arguments are not evidence,

16  nevertheless, for all practical purposes, counsel's admission of guilt on behalf of his

17  client denied to petitioner his constitutional right to have his guilt or innocence decided

18

19  by the jury.  Petitioner, in pleading not guilty, was entitled to have the issue of his guilt

20  or innocence presented to the jury as an adversarial issue.  Counsel's complete

21  concession of petitioner's guilt nullified the adversarial quality of this fundamental

22  issue."  Id.

23

24       Similarly, here, petitioner was entitled to have all elements of guilt or innocence

25  presented to the jury.  By admitting generally petitioner's guilt during his opening

26  statement without a coherent defense strategy to support the admission, Mr. Long

27

28

Supplemental Briefing re: *Cullen v. Pinholster*                    Case No. CIV S-07-0582-AK

deprived petitioner of his right to have his culpability on the charges fairly presented to the jury.

Under some circumstances, it may be a reasonable tactic for counsel to decide to abandon a total defense to all charges and focus the defense only on the more severe charges.  See Anderson v. Calderon, 232 F.3d 1053, 1089-90 (9th Cir. 2000) (reasonable for counsel to concede the killing and ask the jury to convict his client of straight first degree murder but not felony murder, in effect a jury nullification argument, in order to avoid the death penalty); McDowell v. Calderon, 107 F.3d 1351, 1358 (9th Cir. 1997) (reasonable to concede felony murder but argue no intent to kill to try to avoid the death penalty, in light of overwhelming evidence of felony murder).

Indeed, deference to trial counsel's tactical choice only applies where there is an indication that counsel in fact made the tactical choice in question.  In Anderson, trial counsel evidenced his strategic choice by asking for jury instructions in support of his anticipated argument.  Id., 232 F.3d at 1089.  In McDowell, counsel's strategy was apparent by his argument that the defendant entered the victim's house with only the intent to rape.  Id., 107 F.3d at 1358.  By contrast, here, counsel took actions inconsistent with any coherent defense strategy.

Trial counsel did not present a reasonable defense to support a "tactic" of confessing to lesser offenses in order to avoid culpability for more serious offenses.  As noted above, trial counsel argued lack of "force" in suggesting to the jury that petitioner might be guilty under section 288(a) instead of the charged offenses under sections 288(b) and 269.  However, trial counsel failed to argue lack of duress as well as lack of

21

force, and he further failed to present the most minimal defense to the prosecution's theory of guilt based upon "duress" under section 288(b).  Additionally, trial counsel failed to set limitations in his opening statement on petitioner's culpability by suggesting that petitioner, if guilty, was guilty of fewer than 54 offenses.  Thus, in the end, trial counsel's concession effectively served to confess petitioner's guilt to the offenses charged.

Finally, trial counsel did not present the "confession and avoidance" as a reasonable defense tactic because there seemingly was no other defense possible.  Rather, as noted above, trial counsel failed to present a single coherent defense strategy.  Trial counsel failed to present a defense in support of the theory that petitioner was guilty of the lesser offenses under section 288(a).

Moreover, trial counsel's advice to petitioner to proceed to trial given the above circumstances, presents a presumption of prejudice when considered in light of any proffered plea bargain less than 300 years, plus 60 years to life.  The Supreme Court recently found, in applying Strickland, that prejudice was satisfied where the defendant showed "that but for counsel's deficient performance there is a reasonable probability he and the trial court would have accepted the guilty plea. [Citation.]  In addition, as a result of not accepting the plea and being convicted at trial, respondent received a minimum sentence three and a half times greater than he would have received under the plea."  Lafler v. Cooper, --- S.Ct. ----, 2012 WL 932019 *12 (2012).  Lafler is applicable to the present case and further supports a finding of prejudice.

In advising petitioner to go to trial with a tactic of conceding guilt, counsel effectively left petitioner without a defense and deprived petitioner of the opportunity to waive his right to trial and accept a plea bargain which would have ensured a term less than 300 years, plus 60 to life.  Here, in rejecting the district attorney's plea offer and proceeding to trial on a deeply misguided understanding of the law, trial counsel effectively deprived petitioner of any reasonable counsel.  In proceeding to trial, petitioner was never informed of the fact that trial counsel's tactic would most certainly result in a sentence greater than the proffered plea bargain.  In this case, much as in Lafler, there is more than a reasonable probability that petitioner would have achieved a more favorable outcome if he accepted the plea bargain proffered by the prosecution, as he ultimately received a sentence of more than seven times the term.  Accordingly, petitioner has set forth more than a mere colorable claim of ineffectiveness.

Supplemental Briefing re: *Cullen v. Pinholster*                    Case No. CIV S-07-0582-AK

1

2                                  <u>CONCLUSION</u>

3        As discussed herein, petitioner urges this court to permit him to expand the

4   record in support of his claim of ineffective assistance of counsel.

5

6        Date: April 12, 2012

7                                              Respectfully submitted,

8

9                                               _/s/_Jennifer M. Sheetz_

10                                             JENNIFER M. SHEETZ

11                                             Attorney for Petitioner
                                               SCOTT PATRICK

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        24